UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>BRAYTON POINT LLC, PATRIOT STEVEDORING & LOGISTICS, LLC, and EASTERN METAL RECYCLING-TERMINAL, LLC,<br><br>Defendants. | Case No. 1:23-cv-10819 |

**CONSENT DECREE**

WHEREAS, Brayton Point LLC ("Brayton Point") owns property located at 1 Brayton Point Road in Somerset, Massachusetts, along Mount Hope Bay (the "Brayton Point Property");

WHEREAS, Patriot Stevedoring & Logistics, LLC ("Patriot") is the marine terminal operator at the port located at the Brayton Point Property;

WHEREAS, between August 2019 and March 21, 2022, Eastern Metal Recycling-Terminal, LLC ("EMR") conducted a scrap metal storage and loading operation on a portion of the Brayton Point Property;

WHEREAS, the location of the scrap metal storage and loading operation is referred to herein as the "Facility" and is depicted on Exhibit 1 to this Consent Decree;

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint (filed

today against Defendants in the United States District Court, District of Massachusetts) that since August 2019, Defendants have violated the Federal Clean Water Act, 33 U.S.C. § 1331(a), *et seq*. (the "Federal Clean Water Act") by discharging stormwater from the Facility into Mount Hope Bay without complying with an industrial stormwater permit ("Stormwater Permit") issued by the United States Environmental Protection Agency ("EPA"); and further alleges that between August 2019 and March 21, 2022, Defendants' activities at the Facility violated the Federal Clean Air Act, 42 U.S.C. § 7401, *et seq*. ("Federal Clean Air Act") and the Massachusetts Clean Air Act, G.L. c. 111, § 142A.

WHEREAS, on May 11, 2021, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Defendants ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Defendants, pursuant to Section 505 of the Federal Clean Water Act and Section 304 of the Federal Clean Air Act;

WHEREAS, Defendants assert that they have possessed Stormwater Permits since August 2019 and prepared a Stormwater Pollution Prevention Plan ("SWPPP") for the Facility on August 1, 2019, and updated the SWPPP on January 23, 2020, April 16, 2020, June 29, 2020, and September 1, 2020;

WHEREAS, Defendants assert that they certified a valid Notice of Intent ("NOI") on September 24, 2019, under the 2015 Multi-Sector General Permit ("MSGP"), a Change NOI on April 17, 2020, a Change NOI on August 17, 2020, under the 2015 MSGP, and a NOI on June 21, 2021, under the 2021 MSGP;

WHEREAS, Defendants deny the allegations raised by the Commonwealth in the Notice and the Complaint and believe that they have valid defenses to those allegations;

WHEREAS, the Parties have agreed to enter into this Consent Decree because they believe that it is in the Parties' interests and the public interest to proceed promptly with the actions called for in this Decree rather than to expend additional time and resources litigating the matters set forth herein;

WHEREAS, neither this Consent Decree, nor the terms thereof, nor the performance of the terms thereunder by Defendants shall constitute or be construed as an admission or acknowledgment by any Defendant of the Plaintiff's factual or legal assertions in the Notice or the Complaint, and Defendants retain the right to controvert, in any subsequent proceedings, the validity of the facts or determinations underlying this Consent Decree;

WHEREAS, Defendants do not contest Plaintiff's factual or legal assertions in the Notice or the Complaint solely for purposes of the issuance or enforcement of this Consent Decree;

WHEREAS, the Commonwealth and Defendants (collectively, the "Parties") have reached an agreement to resolve the litigation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c) and 42 U.S.C. § 7604(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), Section 304(a)(1) of the Federal Clean Air Act, 42 U.S.C. § 7604(a)(1), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of

Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C.

§ 1365(c)(1), and Section 304(c)(1) of the Federal Clean Air Act, 42 U.S.C. § 7604(c)(1).

2.      The Complaint alleges facts that, if proven, would constitute good and sufficient

grounds for the relief set forth in this Consent Decree.

## II. EFFECTIVE DATE

3.      The Effective Date of this Consent Decree shall be the date on which the Court

signs the Consent Decree and enters it on the docket ("Effective Date").

## III. PARTIES BOUND

4.      This Consent Decree shall constitute a binding agreement between the Parties,

and Defendants consent to its entry as a final judgment by the Court and waive all rights of

appeal upon the Court's signing and entering this Consent Decree on the docket. If the Court

declines to enter this Consent Decree on any ground except one related to form, this Consent

Decree is voidable at the option of either party within fourteen (14) days of the Court's decision.

If, on the other hand, the Court determines that substantive modifications to this Consent Decree

are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to

discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and

Defendants agree otherwise in writing within fourteen (14) days of the Court's decision.

5.      The provisions of this Consent Decree shall apply to and bind Defendants and any

other persons bound by the order pursuant to Fed. R. Civ. P. 65(d)(2).

6.      Defendants shall provide a true copy of this Consent Decree to all of their

managers, directors, officers, supervisors, employees, and agents whose duties might include

compliance with any provision of this Consent Decree. Defendants shall also provide a copy of

this Consent Decree to any contractor retained by it to perform work required under this Consent

Decree and shall condition any such contract, entered into after the Effective Date of the Consent

Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, the Defendant(s) that retained such contractor shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7.      For two (2) years following the Effective Date, Defendants shall provide written notice of any prospective change or transfer in ownership of their respective business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any change or transfer of ownership, management, or operation of the Facility that occurs within two (2) years of the Effective Date, Defendants shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility shall relieve any Defendant of its obligations under Paragraphs 8, 9, 10, or 11 of this Consent Decree.

## IV. PAYMENTS

8.      Within fifteen (15) days of the Effective Date, Defendants shall pay to the Town of Somerset the sum of one hundred and fifty thousand dollars ($150,000) to fund a project or projects that increase enjoyment of, access to, and water quality in Mount Hope Bay in the vicinity of the Brayton Point neighborhood. The payment shall be made by certified check, treasurer's check, or bank check made out to the Town of Somerset, and sent to Town Hall, 140 Wood Street, Somerset, MA 02726, c/o Town Administrator Mark Ullucci. Evidence of Defendants' payment to the Town of Somerset shall be contemporaneously provided by Defendants to the Commonwealth pursuant to Section XI (Notices).

9.      Within fifteen (15) days of the Effective Date, Defendants shall pay to the Town of Swansea the sum of twenty-five thousand dollars ($25,000) to fund a project or projects that increase enjoyment of, access to, and water quality in Mount Hope Bay in the vicinity of the Lee River. Evidence of Defendants' payment to the Town of Swansea shall be contemporaneously provided by Defendants to the Commonwealth pursuant to Section XI (Notices). Payments should be made by wire transfer referencing this action to the following accounts:



10.     Within fifteen (15) days of the Effective Date, Defendants shall pay to Greater Fall River Re-Creation the sum of twenty-five thousand dollars ($25,000) to fund a project or projects that increase enjoyment of, access to, and water quality in Mount Hope Bay in the vicinity of the Taunton River. Evidence of Defendants' payment to Greater Fall River Re-Creation shall be contemporaneously provided by Defendants to the Commonwealth pursuant to Section XI (Notices). Payments should be made by wire transfer referencing this action to the following accounts:



11.     Within fifteen (15) days of the Effective Date, Defendants shall reimburse the Attorney General's Office in the amount of one hundred thousand dollars ($100,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General



and shall include the following in the payment information: "EPD, *Commonwealth v. Brayton Point, LLC, et al. - Costs.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Defendants shall send notice, by electronic mail, that such payment has been made to the Commonwealth to Nora Chorover, Environmental Protection Division at nora.chorover@mass.gov and shall include all of the payment information stated in this Paragraph in addition to the amount of the payment.

## V. INJUNCTIVE RELIEF

### Stormwater Discharges

12.     Defendant Brayton Point will ensure that all future tenants at the Facility obtain an appropriate Stormwater Permit and submit to Brayton Point copies of SWPPPs and other Stormwater Permit documentation.

13.     Defendants Patriot and Brayton Point agree to operate the Facility in compliance with the Federal Clean Water Act and with the applicable requirements of the Stormwater Permit then applicable to each of them, including any amendments thereto or reissuances thereof.

### VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

14.     Defendants Patriot and Brayton Point shall permit the Attorney General's Office to visit the Facility during normal daylight business hours for two (2) years following the Effective Date, provided that the Attorney General's Office provide at least two business days' prior notice. During any site visit, the Attorney General's Office shall have access to and

permission to copy any documentation required to be kept on site by any applicable Stormwater Permit for the Facility.

15.    For a period of two (2) years following the Effective Date, Defendants Patriot and Brayton Point shall provide the Attorney General's Office with electronic links to the following documents:

a.    copies of all documents Patriot and Brayton Point submit from the Effective Date onward to EPA, the Commonwealth, and/or the Town of Somerset concerning Patriot's and Brayton Point's stormwater controls or the quality of Patriot's and Brayton Point's Stormwater Discharges associated with industrial activity at the Facility, including but not limited to all documents and reports submitted to EPA, the Commonwealth, and/or the Town of Somerset from the Effective Date onward as required by any applicable Stormwater Permit for the Facility. Such documents and reports shall be uploaded to a ShareFile site accessible to the Attorney General's Office within two (2) business days after they are submitted to the governmental entity;

b.    current copies of the SWPPP for the Facility and/or for the Brayton Point Property within ten (10) business days of receipt by Brayton Point and Patriot of a request by the Attorney General's Office;

c.    all maintenance records for the Facility's stormwater pollution control systems from the Effective Date onward within ten (10) business days of receipt by Brayton Point or Patriot of a written request by the Attorney General's Office;

d.    written notice of any changes made to any stormwater control measures at the Facility from the Effective Date onward that are described in the SWPPP pursuant to Stormwater Permit Section 6.2.4 within two (2) weeks of completion;

e.     written notice of any changes made to stormwater control measures at the

Facility from the Effective Date onward pursuant to Stormwater Permit Section 6.3 within two

(2) weeks of completion; and

f.     laboratory reports and analytical results of stormwater sampling performed

by or for Defendants from the Effective Date onward for stormwater discharges from the Facility

within ten (10) business days of receiving the reports.

16.     Any information provided by Defendants may be used by the Commonwealth in

any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by

law.

17.     The Consent Decree in no way limits or affects any right of entry and inspection

or any right to obtain information held by the Commonwealth or any of its branches,

departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or

permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents,

records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VII. FORCE MAJEURE AND DISPUTE RESOLUTION

18.     <u>Force Majeure.</u>

a.     Defendants shall perform the actions required by Section V (Injunctive

Relief) within the time limits established in that Section, unless the performance is prevented or

delayed solely by events that constitute a force majeure event.

b.     A force majeure event is an event that arises from causes entirely beyond

Defendants' control that will delay or prevent the performance of any action required by Section

V (Injunctive Relief) despite Defendants' due diligence.

c.     A force majeure event does not include, among other things, unanticipated

or increased costs of performance, changed economic circumstances, or a financial inability to

perform. Except as excused by the Attorney General's Office pursuant to this Section, delay on the part of a Defendant's contractors, subcontractors, or consultants shall be attributable to Defendants.

        d.      Any request to extend the deadlines set forth in Section V (Injunctive Relief) shall be made in writing to the Attorney General's Office, prior to the expiration of the deadline, pursuant to Section XI (Notice). Upon receipt of a timely request for an extension under this Paragraph, the Commonwealth may, in its discretion, grant additional time if it is persuaded that the delay in performance is the result of circumstances beyond all Defendants' control.  The Commonwealth will not unreasonably withhold or condition an extension, but in the event the Commonwealth does withhold an extension, Defendants shall bear the burden of demonstrating that (a) the delay in performance is the result of circumstances beyond their control and (b) the delay could not have been prevented or avoided by the reasonable exercise of due care, foresight, or due diligence on the part of Defendants. In their written notice of delay to the Attorney General's Office, Defendants shall state the anticipated length of delay, the cause of the delay, and the steps or measures it will take to prevent or minimize the delay. Defendants shall adopt reasonable measures to avoid or minimize the delay. Defendants' failure to comply with the notice requirements of this Paragraph shall constitute waiver of their right to request an extension of time with regard to any delay, and a waiver of any right to relief from the deadlines in Section V (Injunctive Relief).

        e.      Except as excused by the Commonwealth pursuant to this Paragraph, delay on the part of Defendants' contractors, subcontractors, or consultants shall be attributable to Defendants, and financial inability or increased costs shall not constitute a force majeure condition. If the Parties are unable to reach an agreement on differences about a delay by informal negotiation or other mutually agreeable means of dispute resolution, then Defendants

may seek judicial review of the Commonwealth's refusal to excuse the delay in this Court, and Defendants shall bear the burden of demonstrating that the Commonwealth's determination that the circumstances causing the delay did not constitute a force majeure condition on the request for delay was unreasonable.

19.    <u>Dispute Resolution</u>.

a.    If the Attorney General's Office has reason to believe that Defendants may be in violation of this Consent Decree, the Attorney General's Office may request, in writing, that Defendants and the Attorney General's Office meet and confer within ten (10)business days of Defendants receiving written notification of such request from the Attorney General's Office, for the purpose of determining whether a violation has occurred and developing a mutually agreed upon plan, including implementation dates, to resolve the dispute.

b.    If, following the Attorney General's Office's written notification under subparagraph (a), Defendants and the Attorney General's Office do not meet and confer, or the meet and confer does not resolve the dispute and result in a mutually agreed upon plan, the Commonwealth shall be entitled to pursue applicable remedies, including filing a motion for available judicial relief from the Court.

**VIII. INTEREST AND COLLECTIONS**

20.    If any payment required pursuant to this Consent Decree is late or not made, Defendants shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

21.     Upon compliance by Defendants with the requirements of Paragraphs 8, 9, 10, and 11 of this Consent Decree, (a) this Consent Decree shall resolve Defendants' liability, and the liability for all persons bound by this Consent Decree pursuant to Fed. R. Civ. Pro 65(d)(2) for the specific legal claims alleged against them in the Complaint and the Notice Letter, and (b) the Commonwealth shall release Defendants from liability for the specific legal claims alleged against them in the Complaint and the Notice Letter.

22.     This Consent Decree constitutes the entire and exclusive agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

23.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically alleged in the Notice Letter or pleaded in the Complaint or for any violations not revealed to the Commonwealth or for violations that occur after the Effective Date; (b) shall be deemed to excuse non-compliance by Defendants, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

24.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree,

warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

25.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## X. MISCELLANEOUS

26.     Defendants understand and agree that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Defendants have agreed to pay under this Consent Decree are not subject to discharge in any bankruptcy.

27.     Defendants shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against them, consistent with the scope of 33 U.S.C. § 1365(d).

28.     Nothing in this Consent Decree shall prevent Defendants from taking any action otherwise required by law.

29.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

30.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next business day.

31.     This Consent Decree may be signed in counterparts. Signature of the Parties transmitted by scanning and email are binding and shall be deemed to be originals for all purposes.

32.     In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33.     The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Consent Decree but shall be construed as if all Parties prepared this Consent Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Consent Decree were negotiated at arm's length by the Parties hereto.

## XI. NOTICES

34.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

> For the Attorney General's Office and the Commonwealth:
>
> Emily M. Field, Attorney
> Environmental Protection Division
> Office of the Attorney General
> One Ashburton Place, 18th Floor
> Boston, MA 02108
> Emily.Field@mass.gov
>
> For Defendant Brayton Point LLC:
>
> Christina S. Marshall, Esq.
> Anderson & Kreiger LLP
> 50 Milk Street, 21st Floor
> Boston, MA 02109
> cmarshall@andersonkreiger.com
>
> For Defendant Eastern Metal Recycling-Terminal, LLC:
>
> Marc J. Goldstein, Esq.
> Beveridge & Diamond, PC
> 155 Federal Street, Suite 1600
> Boston, MA 02110
> mgoldstein@bdlaw.com

For Defendant Patriot Stevedoring & Logistics, LLC:

Gregor I. McGregor, Esq.
Michael J. O'Neill, Esq.
McGregor Legere & Stevens, PC
15 Court Square, Suite 660
Boston, MA 02108
gimcg@McGregorLaw.com
moneill@McGregorLaw.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other Parties to this Consent Decree.

## XII. INTEGRATION

35.    Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between Parties shall have no force and effect.

## XIII. MODIFICATION

36.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Minor modifications of the preliminary plans attached hereto by the Defendants shall not constitute a material change for purposes of this Paragraph.  Two (2) years from the Effective Date, provided there are no pending enforcement actions related to this Consent Decree or outstanding disputes about compliance with this Consent Decree, the Defendants' obligations under the Consent Decree shall terminate.

## XIV. AUTHORITY OF SIGNATORY

37.     Each person signing this Consent Decree on behalf of each of the Defendants acknowledges that: (a) they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) they are authorized to sign and bind the Defendant they represent to the terms of this Consent Decree, and (c) to the extent necessary, the managers, directors, officers, and shareholders of the Defendant they represent have consented to the entry of this Consent Decree as a Final Judgment.

## XVII. RETENTION OF JURISDICTION

38.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree subject to the limitations in Section XIII.

## XV. FINAL JUDGMENT

39.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: _____                    Dated: April 18, 2023
Emily Mitchell Field
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2207
Emily.Field@mass.gov

BRAYTON POINT, LLC,
a Missouri Limited Liability Company:

By: Environmental Liability Transfer, Inc.
Its: Manager

    By: _~~Jon Roberts~~_    APRIL 12, 2023
    Print Name: ~~Michael J. Roberts~~   TOM ROBERTS
    Title: ~~Vice~~ President

PATRIOT STEVEDORING & LOGISTICS, LLC

By: _____   Dated: 1/14/23
Stephen Kelly, Director   CO-DIRECTOR
Patriot Stevedoring & Logistics, LLC

EASTERN METAL RECYCLING-TERMINAL, LLC

By: _____      Dated: 4/10/23
Edward Sciaba, Vice President
Eastern Metal Recycling-Terminal, LLC


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_Denise J. Casper_
_____

United States District Court

Dated: June 16, 2023

17

# EXHIBIT 1



DSN 003

DETENTION BASIN

LEGEND

STRUCTURE STILL REMAINING
FACILITY BOUNDARY
PROPERTY LINE

(SHOULD BE PRINTED ON 11 X 17 INCHES)

**Brayton Point LLC**

| DRAWN BY:  MN | REVISION NUMBER: | DATE OF REVISION | BY: | DESCRIPTION: |
|---|---|---|---|---|
| APPROVED BY:  EBS | #1 | NA | NA | NA |
| DATE:  1/26/2023 | #2 | NA | NA | NA |
| SCALE:  1" = 100' | #3 | NA | NA | NA |

**FACILITY PLAN**
BRAYTON POINT, LLC, PATRIOT STEVEDORING & LOGISTICS, LLC, AND EASTERN METALS RECYCLING-TERMINAL, LLC
SOMERSET, MASSACHUSETTS

| PROJECT NUMBER: | SHEET NUMBER: |
|---|---|
| NA | 1 OF 1 |
| DRAWING DATE: | FIGURE NUMBER: |
| 01/26/2023 | 1 |



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-06121

_____

*Law and Policy Section*                                          *Telephone (202) 514-1442*
*P.O. Box 7415*                                                   *Facsimile (202) 514-4231*
*Washington, DC  20044-7415*

May 24, 2023

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

      Re:    *Commonwealth of Massachusetts v. Brayton Point LLC, Patriot Stevedoring &*
               *Logistics, and Eastern Metal Recycling-Terminal, LLC* (D. Mass.), Case No.
               1:23-cv-10819

Dear Clerk of Court:

      I am writing to notify you that the United States has reviewed the proposed consent
judgment in this action and does not object to its entry by this Court.

      On April 18, 2023, the Citizen Suit Coordinator for the Department of Justice received a
copy of the proposed consent judgment in the above-referenced case for review pursuant to the
Clean Water Act, 33 U.S.C. § 1365(c)(3).[1]  This provision provides, in relevant part:

      No consent judgment shall be entered in an action in which the United States is
      not a party prior to 45 days following the receipt of a copy of the proposed
      consent judgment by the Attorney General and the Administrator.

_____

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad
meaning and encompasses all instruments entered with the consent of the parties that have the
effect of resolving any portion of the case.  For example, a document stipulating to dismissal of a
case of any part thereof is within the scope of this language.  Such documents and any associated
instruments must be submitted to the United States and the court for review, notwithstanding any
provisions purporting to maintain the confidentiality of such materials.  The Department
monitors citizen suit litigation to review compliance with this requirement.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes.  *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based).  For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or an environmentally beneficial project payment sufficient to deter future violations, or combinations of the above.

In this case, the proposed consent decree requires, *inter alia*, that Brayton Point LLC *et al* submit a payment to three non-party organizations to be used for projects that increase enjoyment of, access to, and water quality in Mount Hope Bay in the vicinity of the Brayton Point neighborhood, Lee River, and Taunton River. Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the funds were spent.  In three letters attached as Exhibit A, the intended recipients of the funds confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities.  The United States believes that these letters will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent judgment.  The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement.  *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party).  The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the

parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. *See* 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court. Please contact the undersigned at 202-514-0652 if you have any questions.

Sincerely,

*/s/ Cynthia Taub*

Cynthia Taub, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C.  20044-4390

cc:    Counsel on Record via ECF

# EXHIBIT A



# Town Administrator
### Town Office Building
### 140 Wood Street
### Somerset, MA 02726
### (508) 646-2800 phone
### (508) 646-2802 fax

May 2, 2023
Citizen Suit Coordinator
Environmental & Natural Resources Division
Law & Policy Section
P.O. Box 7415 – Ben Franklin Station
Washington DC 20044-7415

Re:     _Commonwealth v. Brayton Point LLC et al_, Case No 1:23-cv-10819

Dear Citizen Suit Coordinator:

The Town of Somerset is a community in Southeastern Massachusetts located on the western shore of the Taunton River and Mount Hope Bay. Between August 2019 and March 2022, the scrap metal facility that was the subject of this case was located on a peninsula in Mount Hope Bay within the Town of Somerset.

The Town has read the proposed consent judgment for Commonwealth v. Brayton Point LLC et al. The Town is aware that the Commonwealth's complaint alleges state and federal environmental claims.

The Town will use the consent judgement funds allocated to it under paragraph 8 to design and construct a shoreline access and viewpoint to Mount Hope Bay in the Brayton Point neighborhood at the area shown on the attached figure. This project will improve water quality in Mount Hope Bay by incorporating shoreline and habitat restoration, erosion mitigation, invasive plant species remediation, and native plantings. The new access/viewpoint will also serve to increase public connection with and protection of Mount Hope Bay. If the consent judgment funds are sufficient, the project will include, a kayak rack, inclement weather shelter, seating, fishing area, osprey nest platform, and accessible walkway.

The Town will administer the funds allocated to it under paragraph 8 solely for the purpose specified in this letter. We will not use any funds for political lobbying purposes. We plan to expend the funds by December 2024. Once expended, we will provide a letter to the Court, the United States, the Commonwealth of Massachusetts, and the companies involved in this case describing how the funds were spent.

Please feel free to contact us with any questions. I can be reached at 508-646-2800, or mullucci@town.somerset.ma.us.

Sincerely,

Mark Ullucci, Town Administrator

*Town of Swansea*

*Office of the Town Administrator*
*81 Main Street*
*Swansea, MA 02777*
*TEL. (508) 678-2981*
*FAX (508) 324-6700*

May 15, 2023

Citizen Suit Coordinator
Environmental & Natural Resources Division
Law & Policy Section
P.O. Box 7415 – Ben Franklin Station
Washington DC 20044-7415

Re:    *Commonwealth v. Brayton Point LLC et al*, Case No 1:23-cv-10819

Dear Citizen Suit Coordinator:

The Town of Swansea is a community in Southeastern Massachusetts located on the Mount Hope Bay. Between August 2019 and March 2022, the scrap metal facility that was the subject of this case was located on a peninsula in Mount Hope Bay within the Town of Somerset, near the Town of Swansea.

The Town has read the proposed consent judgment for Commonwealth v. Brayton Point LLC et al. The Town is aware that the Commonwealth's complaint alleges state and federal environmental claims.

The Town will use the funds allocated to it under paragraph 9 to design and construct shoreline improvements that increase access to and improve water quality in Mount Hope Bay by incorporating shoreline and habitat restoration, erosion mitigation, invasive plant species remediation, native plantings, or for testing water quality. The improvements may also serve to increase public connection with and protection of Mount Hope Bay, including shell fishing activities.

The Town will administer the funds allocated to it under paragraph 9 solely for the purpose specified in this letter. We will not use any funds for political lobbying purposes. We plan to expend the funds by December 2024. Once expended, we will provide a letter to the Court, the United States, the Commonwealth of Massachusetts, and the companies involved in this case describing how the funds were spent.

Please feel free to contact us with any questions. I can be reached at 508-678-2981, Option 5 .

Sincerely,

Mallory Aronstein
Town Administrator



Grace Gerling
Executive Director

Greg O'Donnell
President

 45 Rock Street | Fall River, MA 02720
 508 679 0922
 gracegerling@gfrrec.org
🌐 www.gfrrec.org

April 25, 2023

Citizen Suit Coordinator
Environmental & Natural Resources Division
Law & Policy Section
P.O. Box 7415 - Ben Franklin Station
Washington DC 20044-7415

Dear Citizen Suit Coordinator:

Greater Fall River RE-CREATION Inc. (RE-CREATION) is a 501(c)(3) agency conceived in 1970 by a group of young, local professionals who were concerned about the lack of recreational and cultural opportunities available to Fall River, Massachusetts' youth and concluded that it was time to "recreate" the spirit of community involvement. RE-CREATION was officially formed in 1972 and has evolved into an agency that provides a multitude of programs and services for all ages, with a focus on socially and economically disadvantaged and at-risk youth.

In 2016 RE-CREATION acquired the Department of Conservation and Recreation permit to operate the sailing program located at Heritage State Park in Fall River. Entitled "Sail Rec!," this program offers learn-to-sail instruction for participants of all ages as well as sailboat rentals and racing to the general public.

We have read the proposed consent judgment and understand that the monies shall be used for the purposes specified and that no monies will be used for political lobbying activities.

As per the decree, we intend to "increase water quality in Mount Hope Bay" by funding the following:

1) A permanently installed trash skimmer at our facility docks to collect floating debris from the Battleship Cove area of Mount Hope Bay accompanied by an interpretive sign mounted on the adjacent boardwalk.
2) High-quality, reusable water bottles provided to our participants to reduce or eliminate the influx of plastic water bottles to our premises. Single use plastic water bottles are frequently blown into the water from docks and boats.
3) A garden hose filtration system to provide clean drinking water to our program participants which will assist in the elimination of single use plastic bottles.

We further understand that we shall document the above expenditures and submit same to the Court, the United States, and the parties.

Sincerely,

Christopher J. Nardi
Sailing Program Director

One Community
One Future